IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRIS MARTIN,                )
                             )    Civil No. 07-1518-MO
        Petitioner,          )
                             )
    v.                       )
                             )
DON MILLS,                   )
                             )    OPINION AND ORDER
        Respondent.          )

    Kristina Hellman
    Assistant Federal Public Defender
    101 S.W. Main Street, Suite 1700
    Portland, Oregon 97204

        Attorney for Petitioner

    Hardy Myers
    Attorney General
    Jonathan W. Diehl
    Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, Oregon 97310

        Attorneys for Respondent

///

    1 - OPINION AND ORDER

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he seeks to challenge the legality of his underlying state court convictions. For the reasons which follow, the Petition for Writ of Habeas Corpus (#2) is denied.

## BACKGROUND

According to evidence adduced at petitioner's criminal trial, he and his girlfriend, Catherine Comer, began to argue while driving home in petitioner's truck. Respondent's Exhibit 103, pp. 23-25. When Comer "just got tired of [arguing]," she tried to open the passenger door to jump out of the truck. *Id* at 25. Petitioner pulled her back and onto the floor of his truck and began kicking her in the chest with his boots. *Id* at 26-28. When Comer attempted to kick him, petitioner bit her on the outside of her left thigh. *Id* at 33. During this altercation, petitioner also put a boot on Comer's throat with enough pressure to prevent her from breathing. *Id* at 34. When she told petitioner that she was unable to breathe, petitioner told Comer he was going to "kill [her] and put [her] body in a ditch somewhere." *Id* at 33. Comer pled with petitioner to take his foot off of her throat, and he complied. *Id* at 34-35.

Shortly thereafter, the couple pulled into the driveway of the house where they lived, and petitioner informed Comer that he was going to kill himself. *Id* at 35. Comer testified that she waited

2 - OPINION AND ORDER

in the truck for five or ten minutes before entering the house. Two minutes later, she heard the truck start again. Fearful that petitioner might really hurt himself, Comer dialed 911. *Id* at 36. She did not inform the 911 operator that she had been assaulted. *Id* at 36-37.

In the meantime, petitioner returned to the house and, realizing Comer had called 911, "disappeared" within the house. *Id* at 40. The authorities arrived at the home and discovered an unloaded rifle in the back seat of petitioner's truck. *Id* at 96. Comer had obviously been assaulted, and was afraid to tell the police what happened or where petitioner was. *Id* at 100-104. The police searched the house, found petitioner hiding in a closet underneath a blanket, and took him into custody. *Id* at 192. The police also found two more rifles in a separate close within the house. *Id* at 230.

As a result of these events, the Yamhill County Grand Jury indicted petitioner on charges of Assault in the First Degree, Assault in the Second Degree, Assault in the Fourth Degree, Menacing, Interfering with Making a Report, and three counts of Felon in Possession of a Firearm.  Respondent's Exhibit 102. Petitioner proceeded to a jury trial where he testified in his own defense.  Petitioner did not dispute that he inflicted injuries on Comer, but claimed that  Comer had "attempted suicide a couple of times" in the past, and that his actions were necessary to prevent

3 - OPINION AND ORDER

her from injuring herself by jumping from the moving vehicle. *Id* at 271, 283. He claimed that he was simply trying to hold Comer down on the floor of his truck with one foot while driving with the other. *Id* at 281. He further testified that Comer must have suffered her injuries by landing on the "shifter lever on the floor" when he "pushed her down there." *Id* at 283. Importantly, petitioner claimed that Comer was lying face down on the floor, and he was holding her down with his foot on her back.[1] *Id* at 284. He also claimed that he hid from the police on the night in question only because, by living with Comer, he was violating his probation stemming from a previous assault on Comer. *Id* at 264-65.

The Jury acquitted petitioner of Assault in the First Degree and Interfering with Making a Report, but convicted him of Assault in the Second Degree, Assault in the Fourth Degree, Menacing, and three counts of Felon in Possession of a Firearm. Respondent's Exhibit 102. As a result, the trial court sentenced petitioner to a total of 70 months' imprisonment. Respondent's Exhibit 101.

Petitioner did not take a direct appeal, but instead proceeded to file a petition for post-conviction relief ("PCR") in Umatilla County where the PCR trial court denied relief on all of his claims. Respondent's Exhibit 114. The Oregon Court of Appeals

---

[1] As explained later in this Opinion, this testimony contradicted not only Comer's version of events, but was also in conflict with the testimony of the emergency room physician who attended to Comer's injuries on the night in question.

4 - OPINION AND ORDER

affirmed the lower court without opinion, and the Oregon Supreme Court denied review. Respondent's Exhibits 119-120.

Petitioner filed this federal habeas corpus action on October 11, 2007 in which he argues a single claim: whether trial counsel was constitutionally ineffective when he failed to file a motion to sever the firearms charges. He submits the remainder of his claims in his *pro se* Petition for consideration on the existing record.

## DISCUSSION

### I.  Standard of Review.

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court

5 - OPINION AND ORDER

and nevertheless arrives at a result different from [that] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id* at 413.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.  *Id* at 410.  The state court's application of clearly established law must be objectively unreasonable.  *Id* at 409.

In this case, the PCR trial court concluded only that petitioner failed to sustain his burden of proof.  Respondent's Exhibit 113, p. 15; Respondent's Exhibit 114, p. 1.  Because the PCR trial court did not provide reasoning to support its conclusion, this court shall conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law.  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  Although the court independently reviews the record, it still lends deference to the state court's ultimate decision.  *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

**II.  Unargued Claims.**

There are a number of claims in the *pro se* Petition which respondent addressed in his Response, but which petitioner has not supported with any briefing.  The court has nevertheless reviewed

6 - OPINION AND ORDER

petitioner's unargued claims on the existing record and determined that they do not entitle him to relief. *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.").

### III. Ineffective Assistance of Counsel: Motion to Sever.

In petitioner's remaining claim, he asserts that trial counsel rendered ineffective assistance when he failed to file a motion to sever his firearm charges from the remaining counts in the indictment. The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel. First, the petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-687 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694.

7 - OPINION AND ORDER

A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696.

The court must first determine whether a motion to sever the firearms charges would have been meritorious. Under Oregon law, ORS 132.560(b) allows charging separate offenses by the same person in a single indictment if they are: "(A) Of the same or similar character; (B) Based on the same act or transaction; or (C) Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

According to respondent, the firearm counts were logically related to the other counts because the weapons charges arose from the same transaction as the remaining charges. To substantiate this claim, respondent directs the court's attention to the affidavit of trial counsel which was submitted to the PCR trial court for consideration. According to counsel's affidavit, "[w]hen the police responded to the victim's 911 call, one gun was found in petitioner's truck, and two were found in the home petitioner shared with the victim." Respondent's Exhibit 112, p. 2.

"'Two charges arise out of the same act or transaction if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge.'" *State v. Fore,* 185 Or.App. 712, 717, 62 P.3d 400 (2003) (quoting *State v. Fitzgerald*, 267 Or. 266, 273, 516 P.2d 1280 (1973)). The police discovered petitioner's

8 - OPINION AND ORDER

firearms based on Comer's 911 call, wherein she informed them "that there was a possible suicidal suspect that left that residence in a white Ford pickup, possibly armed with a shotgun. . . ." Respondent's Exhibit 103, p. 93. It was only after the authorities arrived at the house that they first saw that Comer had suffered "a black eye and had marks and scrapes on her face" leading them to believe she had been assaulted. *Id* at 100-101.

It is uncontroverted that none of the firearms discovered by the police was used in the assault on Comer. The facts underlying the non-firearms charges against petitioner can easily be recounted without relating the details of the firearms charges. The fact that the police discovered the firearms during a search stemming from a 911 call unrelated to the other crimes for which petitioner was on trial does not suggest that all of the charges overlap. Even if Comer had called 911 to relate her assault to them, she would have done so with no mention of petitioner's firearms aside from a possible warning to the investigating officers to be mindful that petitioner owned firearms. For these reasons, the court concludes that the firearms charges could have been severed, and that counsel should have filed such a motion.

Having established that counsel should have filed a motion to sever the firearms charges, petitioner must also demonstrate that he suffered prejudice as a result of counsel's failure to file such a motion. According to petitioner, prejudice is evident by the

9 - OPINION AND ORDER

fact that his underlying felony conviction for Theft should not have been used as a basis for the firearms charges because the Theft conviction was more than 15 years old and, therefore, excludable under the applicable statute. *See* ORS 166.270(4). As an initial matter, this argument was not fairly presented to the Oregon Supreme Court and should not be considered by this court.[2] *See* Respondent's Exhibit 118; *see also Rose v. Lundy*, 455 U.S. 509, 519 (1982) (requiring a petitioner to fairly present his claims to the state's highest court before bringing raising it in a federal habeas proceeding).

In addition, even assuming that the firearm charges were not appropriate based on the age of the underlying felony, a motion to sever would not have been the proper course; counsel should have moved to dismiss those charges. Counsel's failure to file a motion to sever would not have impacted counsel's ability to file a motion to dismiss the charges based on the purported age of the felony Theft conviction. Consequently, the viability of the firearms charges has no bearing on whether counsel's failure to move for severance resulted in prejudice to petitioner.

Petitioner's core argument concerning prejudice is based on his allegations that the inclusion of the firearms charges: (1) informed the jury that he was a convicted felon; and (2) placed

---

[2] "[W]hether a state court's decision was unreasonable must be assessed in light of the record the court had before it". *Holland v. Jackson*, 542 U.S. 649, 652 (2004).

10 - OPINION AND ORDER

a link between the charged assault and the firearms where there was no such link, thereby casting the assault in a more serious light. But petitioner has not shown that, based on the evidence adduced at trial, the outcome of his case would have been different were it not for the presence of the firearms charges.

There was no dispute at trial that Comer suffered significant injuries, nor was it disputed that petitioner inflicted them. The emergency room physician who examined Comer testified that she suffered potentially life-threatening injuries which were consistent with the version of events she related to him. Respondent's Exhibit 103, pp. 137-38. He concluded that, contrary to petitioner's version of events, Comer was lying face up and fighting violently for her life while "being stomped by boots" on her face and chest. *Id* at 151-52. "[I]t seemed clear that she had been on the floor of the pickup truck on her back, face-up, and with repeated blows to her face and at least one really significant blow to her chest, and lots of blows, especially around the left arm and left chest." *Id* at 152-53.

Petitioner's attorney summed up the trial in a letter to petitioner shortly following the criminal trial, which counsel later incorporated by reference into an affidavit which he filed with the PCR trial court:

> The evidence against you was almost overwhelming. Dawn was badly injured. Her testimony was strong. It was even overwhelming. The jury was visibly moved by her testimony and demeanor. The doctor and expert witnesses

11 - OPINION AND ORDER

>     who testified for the prosecution were very strong and
>     buttressed Dawn's testimony one hundred percent.  Dawn
>     also told a consistent story [to] the doctor and each
>     police officer who interviewed her.

Respondent's Exhibit 112, Att. A, p. 1.

Comer's testimony was particularly strong because she was a reluctant witness who testified only because she had been subpoenaed to do so.  Respondent's Exhibit 103, pp. 4-5.  She testified that she was still in love with petitioner, did not want to provide information which would allow the jury to convict him, but was aware of her obligation to tell the truth on the stand. *Id.* All of this information was developed in the presence of the jury.

Moreover, there is a strong indication that the jury remained impartial in this case in the face of the firearms charges. Despite evidence that petitioner inflicted life-threatening injuries on Comer while violating a restraining order stemming from a prior assault on her, the jury nevertheless acquitted petitioner of two charges, including the most serious charge in the Indictment (Assault in the First Degree).  It therefore appears that the jurors did not disregard their duty to remain impartial, and instead diligently served and reached a fully supportable conclusion.

Based upon an independent review of the record, the totality of the evidence strongly suggests that the jury was not prejudiced by the inclusion of the firearms charges, and that the outcome of

this case would not have been different had counsel successfully moved to sever petitioner's firearms charges. At a minimum, this court is unable to conclude that the state court decisions denying relief on this claim involved an unreasonable application of *Strickland*. Accordingly, the Petition for Writ of Habeas Corpus is denied.

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) is DENIED.

IT IS SO ORDERED.

DATED this  17   day of November, 2008.

                                 /s/Michael W. Mosman  
                                  Michael W. Mosman  
                                  United States District Judge